Good morning your honors, Donald Cook for Michelle Rivera. An officer who does what he's been told and trained to do, the officer whose training leaves him with no option other than to release the find-and-bite dogs, the officer who cannot use a find-and-bark dog because again the agency has determined that it's find-and-bite and the agency has determined that the dog bites if you don't get an immediate surrender to your last warning. Laypeople, jurors and judges, I submit, would say that officer acts reasonably. Now this is a following orders defense, but it's not a gas chamber, it's not a final solution type situation where one would say no matter how clear or specific the order was you have no business following it. So the problem in this case is, you know, there isn't any dispute about what happened here, right? The women fled first in the vehicle, then in the creek bed, helicopter watched them, helicopter directed the officers to where they were. There was some dispute as to whether she raised her hand, I think, before the dog. Well, not really, okay? The FLIR video establishes they did raise their hands, okay? The officer said, well, I didn't really see that, but the FLIR captures it and it's also obvious, I mean, the officer admits to it that he sees them laying there, he orders the dog to attack and bite, because that's the policy, that's the training. The dog goes past them, and so he orders the dog again because, of course, that's the training, that's the policy. And the point of this is that when you let in, in this case, a following orders defense where the officer, again, it's not disputed that he followed that policy, followed that training, and it's a find-and-bite dog and that's what it's going to do, a jury is going to say, well, doesn't the officer act reasonably when he does what he's told and trained to do? I mean, think about it. Generally speaking, what do you want officers to do? You want them to do what their training says they're supposed to do. Generally, in these excessive force cases where the plaintiff claims there's wrongdoing, there's the claim that there's a, the officer acted in violation of the policy, in violation of the training, that's, you know, it can be evidence of unreasonableness. That wasn't his case. So by the trial judge here, Gutierrez, by denying the motion to keep out this evidence of policy and training, permitting every major defense witness to come in and justify the officer's conduct that he followed training, he followed policy, which, by the way, he did. There's no more complaint, is that this is the training. With respect to that officer, yes, a jury would say, well, he acts reasonably. Now, if you're addressing the question of, gosh, should really this be the training? Should it be a find-and-bite versus find-and-bark dog? Different question and a problem is that Chiu v. Gates, a case that will always live in infamy just because of its name, where in order to reach the issue, this court said, look, we have to assume that the jury exonerated the officer on grounds that he acted reasonably. Is there still a case against the city? And they say the city's training, city policy, left the officer with no other choice than to do what he did. Therefore, the training, the policy, the training of find-and-bite dogs, whether you should have find-and-bark dogs, that becomes really the issue to try and the city can be liable for that. So plaintiff never had a chance, we submit, to establish that using a find-and-bite dog could constitute unreasonable force under these circumstances where you know where the women are, the helicopter's told you they're there, they're there laying, not doing anything, the dog's trained differently, then you don't have a So, as I say, this is not the usual kind of excessive force case where you've got this big dispute of fact, did the officer pop him on his head with a baton or not? No question about the biting, no question it's because of the policy, it's because of a find-and-bite dog. The other issue, two issues I'll just touch on briefly, is letting the officer defend his conduct on the basis of his good character as established by his awards and accommodations, etc. That should have never come in, alright? His good character is not the issue and it's obviously prejudicial. I mean, Ms. Rivera had an uphill battle to begin with, right? You know, led the police on the chase, did not surrender earlier, of course had opportunities to do so, has a criminal record. That's improper to let the officer defend on his character. And the final point is the attack on Dr. Meade's credibility because he has been sued, right? Sued in cases where there's never been a finding against him, there's no information about even what the lawsuit was about, and then defense gets up and argues that you don't need to believe Dr. Meade because if you ever go to him for treatment, you'll be a medical malpractice lawsuit number 15 or something. Eleven. There's a lot more I could say but I've got three and a half minutes, I'll save it for rebuttal. Thank you. Let me ask you a quick question, Counsel, regarding the questions of the doctor, the lawsuits. He had a full opportunity to explain that and he did explain that it didn't result in any findings of liability, right? Yes, he did. Good morning, may it please the court. Erica Cortez on behalf of the County of San Diego Sheriff Gore and Sheriff's Deputy Frank Glava. I'd like to start by drawing the court to two key principles that plaintiff's counsel or plaintiff fails to miss. And one is the evidentiary rulings that she contests are reviewed for abuse of discretion. And what abuse of discretion means is, A, it must have been a manifestly erroneous error. And two, even if it was, it had to have substantially prejudiced plaintiff in light of all of the evidence before the jury. And we know that on appeal of a jury verdict, the evidence is viewed in the light of the evidence before the jury, and the jury is most favorable to the verdict. So that being said, what we have here are the three evidentiary issues alluded to by plaintiff's counsel. And first, I'll address the issue about the department policy. You can see that they were all three in error? Absolutely not, Your Honor. I would say that the plaintiff fails to meet their burden that they were in error. And even if the court disagrees, in light of all of the evidence before the jury, they absolutely... It's a difficult battle with me with regard to the questions to the doctor and the comment that was made about his testimony to the jury. It seems pretty egregious. And I'll address that in two parts. First, Your Honor, the objection made before... Prior to trial, we objected to the relevance and the foundational expertise, as well as perjury issues on behalf of Dr. Mead. And our motion in Laminate to exclude his testimony was denied. Notably, in Quintanilla versus the City of Downey, the Ninth Circuit had virtually the exact same facts before it, the same plaintiff's counsel, the exact same doctor, attempting to testify about the same things he testified in Rivera. And that is the nature and severity of injuries resulting from dog bites, the likelihood of infection, hospitalization rates, potential for severe injury. And there, Dr. Mead was excluded from testifying because the court found in the Ninth Circuit upheld that whether all of that testimony was irrelevant to the issue of individual liability and whether the officer's use of a dog was excessive force. The testimony of Dr. Mead, which is the exact same testimony proffered and actually given... Yeah, that's an argument that it didn't make any difference, but are you defending the question and the comment? Yes, Your Honor, because in light of the fact that Dr. Mead's testimony was wholly irrelevant to begin with and was not a key part of the evidence and shouldn't have been part of the record and was substantially prejudicial to defendants because it could have confused the jury as to issues of other instances and the department policy, which wasn't an issue before the trial. It's really to complain about just one question in the scheme of what Dr. Mead was proffered to testify when the majority of his testimony was prejudicial to defendants seems unfair. But secondarily, it's not erroneous because there was no objection made on 404 grounds before the trial court. The only grounds made were relevance and substantial prejudice. But even if this court finds plaintiff can bring up the 404 objection, the malpractice lawsuits were not brought to show propensity that he was in fact going to commit malpractice. What was the purpose of it? The purpose was to impeach his credibility and to show that his foundational and expertise were not proper. And the reason in this case it's not egregious is because in light of all of the testimony he gave, he admitted that he did not write his Rule 26 report. Plaintiff's counsel wrote it and he participated in some of it. He admitted that he perjured. I don't see how that is in any way relevant to attacking somebody's credibility. The doctor was opining on his medical credentials and what his ability was for hospitalization, what he had seen in his studies regarding the gravity of dog bites versus a street dog bite because his medical opinion was that in what he has seen in the hospital, police dog bites have bigger injuries than your typical street dog. And he was relying on that and all of his medical expertise to proffer that testimony. The question is what does the fact that he's been sued have to do with any of that? Well, the circuit has held that there's wide latitude with credibility on experts and the fact that he's giving a medical expert opinion and actually the testimony on when he was impeached. The questions don't go to the substance of his testimony as an expert. They go to his credibility as his character. He's been sued. And if it wasn't clear in the question, it seems it was certainly clear when the comment was made in final argument. Well, your honor, character evidence under 404 and the federal rules is not allowed when you're offering it to show propensity to commit that act. Here he wasn't in a medical malpractice lawsuit as a defendant, lawsuits being discussed to show that he therefore acted in propensity with prior lawsuits when he was sued in this case. It was offered to attack his credibility in conjunction with his entire testimony that he had very little expertise. He was you can see because I've taken too much of your time. We can see the fact that he's been sued, had nothing to do with it, with with anything in this case. Your honor, based on I understand, based on the totality of his testimony and the perjury he committed and the lack of foundation, I do not think that I do think it is still relevant to his credibility. However, as Justice Nguyen pointed, Judge Nguyen pointed out, Dr. Meade explained that they were not. Excuse me, Dr. Meade explained that he was nothing came of it and he was able to be rehabilitated on that issue. And I don't see that in light of the entire record before the jury, how his testimony or even that one statement would have substantially prejudiced the plaintiff, particularly because on two separate verdict questions. One with respect to the 1983 claim and second with respect to the Bain Act claim, the jury said no on both counts that Miss Rivera was not subjected to unreasonable force. And that is because the totality of the record was that they were recklessly driving and putting other innocent and pedestrians at risk. They were running through shopping malls. They were willing to do anything. They were to avoid getting caught. They ignored multiple canine warnings. They did not surrender. And that actually goes to another point Judge Antune brought up earlier, and that was that there was some dispute about whether or not Miss Rivera surrendered. And plaintiff's counsel said the video was clear. The FLIR video is absolutely not clear. I mean, it's thermal imaging where it's black and white. It doesn't show definitively that hands are up. But even if you believe that her hands were up, the FLIR video shows that the time between the very quick movement, which the jury could have also believed was just a knee-jerk reaction to the dog coming, was seconds before the dog actually bit. So it would have been inconceivable to be able to pull him off as almost spontaneously as when they allegedly surrendered. So in light of that evidence and the fact that it was dark, multiple, multiple witnesses talked about how there were, in fact, lots of bushes and tall brush about 10 to 15 feet tall. In fact, when you look at the aerial footage, which is shot from the sky, there are multiple times when the helicopter loses sight of them. In fact, the FLIR video at 21-37-53 says, I lose them for half the orbit, and I hope they're still there. So there is a lot of evidence before the jury that would allow them to find, independent of this comment, that the force was not reasonable. Excuse me, the force was reasonable. With respect to, I'll rebut one last, with respect to counsel's argument that the admission of the, that Deputy Leyva acted in compliance with his department policy, this circuit in Drummond v. City of Anaheim, Davis v. Mason County, and Scott v. Hendrick, has in fact stated that training materials and police guidelines are relevant factors to whether or not there was objective reasonableness. The question is never whether the officer followed policy, because policy is not whether it's the Constitution. But this court has held that it is a relevant factor amongst many. And here, it was proper to allow Deputy Leyva to testify that he was within policy. And that was only just one factor, because Dr. Martinelli testified that our, the Sheriff's Department canine policy was in line with state and federal standards. And therefore, nothing was offered to rebut that our canine policy was not in line with state and federal standards. So, and if there was any potential for error, jury instruction 26 cured that error by saying and telling the jury that they couldn't exclusively rely on that as a factor to find that just because he followed or was in conformity with his policy that that format reasonable force. And with that, if there are not any questions, I would submit on the briefing. Thank you, Counsel. Dr. Meade testified to Ms. Rivera's injuries. Inside of her upper left thigh, very close to her genitals, very, very serious injury. The natural reaction, he testified, would be to try to defend yourself from that type of animal, from an animal injuring you, biting you, mutilating you in that area of their body. And the expected pattern you would see, all other things being equal, you know, injuries to like hands and wrists as you're trying to stop the dog. Ms. Rivera had none of those injuries, according to Dr. Meade, suggesting that she was unable to defend herself, get the dog off. And why was she unable? Because, of course, the officers were holding her, in the process of handcuffing her. And this, of course, goes to the question of even if you say that the initial dog attack is okay, letting the dog continue to bite as you're holding her, you know, may be unreasonable. So the point of Dr. Meade's testimony includes the fact that the dog was allowed to bite her for too long, given the injury pattern. And then for counsel, and by the way, it was Ms. Cortez herself who made the argument, to then get up and say, you don't need to believe Dr. Meade because, you know, don't ever let him do surgery on you because you might be lawsuit number 11. That was an attack on his character. So that testimony, letting the evidence in, was prejudicial. Counsel stated that the jury made a finding that there was no unreasonable force. No, the jury did not. The question to the jury was, did plaintiff prove that Defendant Frank Leyva used unreasonable force? It's not the question of, was unreasonable force used? And that's where this policy defense becomes so important. Look, and this claim that there was no evidence presented that the sheriff's policy was unreasonable, well, yeah, that's true because, first of all, the court dismissed the 12B6 motion, the claim against the Sheriff's Department, which turned out we were exactly right. He acted according to policy. And then the judge wouldn't let us come in with evidence at trial to attack the policy because the policy wasn't on trial because the county had been dismissed. Instruction number 26 with regard to policy, that was a plaintiff-requested instruction, and it's obvious, you know, from my argument why plaintiff requested it. It's not enough. The following orders defense works. As I say, this is not a final solution type situation. It's undisputed. He was following policy, doing what he was told and trained to do. He had no other choice but to use a find-and-bite dog, and it's expected the dog would have bite. Thank you very much. All right. Thank you, Counsel Fozard, for your argument. The matter is submitted.
judges: Nguyen, Owens, Antoonii